UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

JUSTIN PHILLIP,

                Plaintiff,

v.

DEPARTMENT OF SANITATION,

                Defendant.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
16-CV-2412 (MKB)

MARGO K. BRODIE, United States District Judge:

       Plaintiff Justin Phillip, proceeding *pro se*, commenced the above-captioned action on May 11, 2016, against his former employer, Defendant New York City Department of Sanitation ("DSNY"), asserting discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").[1]  (Compl., Docket Entry No. 1.)  Plaintiff alleges discrimination based on his termination and unequal terms and conditions he experienced during his employment.  (*Id.*)  Currently before the Court is Defendant's motion for summary judgment. (Def. Mot. for Summ. J., Docket Entry No. 32; Def. Mem. in Supp. of Mot. for Summ. J. ("Def. Mem."), Docket Entry No. 32-16.)  For the reasons set forth below, the Court grants Defendant's motion for summary judgment and dismisses Plaintiff's claims.

---

[1]  Plaintiff commenced this action by filing a form complaint that prompts claimants to indicate the basis for the alleged discrimination by checking a series of boxes.  (*See generally* Compl., Docket Entry No. 1.)  Plaintiff checked the box corresponding to discrimination on the basis of gender, religion, color, age, and disability, and the boxes indicating that he was subject to discrimination through termination and unequal terms and conditions of employment.  (*Id.* at 3–4.)

## I. Background

### a. Factual background

Plaintiff is a former probationary sanitation worker at the DSNY who identifies as black. (Def. Rule 56.1 Statement of Undisputed Material Facts ("Def. 56.1") ¶¶ 1–3, Docket Entry No. 32-15.)[2] Plaintiff began his work at DSNY on November 11, 2013, for an eighteen-month trial period. (*Id*. ¶¶ 2, 4.) However, after breaking his leg in a sanitation truck accident on July 15, 2014 (the "July 15, 2014 accident"), Plaintiff took medical leave and, as a result, DSNY extended his probationary period. (*Id*. ¶¶ 20–23; Phillip Dep. ("Pl. Dep.") 59:23–60:14, annexed to Def. Mot. as Ex. B, Docket Entry No. 32-3.) DSNY originally assigned Plaintiff to garage M12 in Manhattan, New York, but after Plaintiff requested a transfer, DSNY transferred him to garage BK 14 in Brooklyn, New York. (Def. 56.1 ¶¶ 5–7.) At BK 14, Plaintiff worked night shifts, and had four direct supervisors, including Paul Cavallaro,[3] one of the individuals whom Plaintiff alleges treated him in a discriminatory manner. (*Id*. ¶¶ 8–13; Pl. Dep. 25:22–27:1, 28:22–29:3.) On February 23, 2015, DSNY terminated Plaintiff's employment. (Def. 56.1 ¶¶ 35–38.)

---

[2] The Court gave Plaintiff additional time to respond to Defendant's motion for summary judgment, including Defendant's Statement of Material Facts Pursuant to Local Civ. R. 56.1, but Plaintiff never responded. (Def. Rule 56.1 Statement of Undisputed Material Facts ("Def. 56.1"), Docket Entry No. 32-15.) In light of Plaintiff's *pro se* status, the Court will "deem admitted only those facts that are supported by the record and not controverted by other admissible evidence." *Hill v. Laird*, 06-CV-126, 2016 WL 3248332, at *4 (E.D.N.Y. June 13, 2016) (citing *McLean v. Metro. Jewish Geriatric Ctr.*, No. 11-CV-3065, 2013 WL 5744467, at *1 (E.D.N.Y. Oct. 23, 2013) (internal quotation marks omitted)).

[3] Although Paul Cavallaro's name is spelled "Cavalaro" in Plaintiff's deposition transcript, based on DSNY's Rule 56.1 Statement, "Cavallaro," appears to be the correct spelling. (*See generally* Def. 56.1.)

### b.  Disciplinary complaints and termination

While at BK 14, Plaintiff had several disciplinary complaints filed against him.  In total,

Plaintiff received five disciplinary complaints over the course of his employment and was the

subject of an official letter of warning.  (*Id.* ¶ 15.)  Plaintiff alleges that these complaints were

"false," and that he was never given an opportunity to challenge or clear them.  (Pl. Dep. 76:16–

17.)

DSNY issued Plaintiff a warning for his involvement in a sanitation truck accident on

December 14, 2013.  (Def. 56.1 ¶¶ 16–18, 20–21.)  On December 14, 2013, Plaintiff drove a

collection truck into the rear of a parked vehicle and damaged the vehicle's bumper.  (New York

State Div. of Human Rights Compl. ("NYSDHR Compl.") 4–5, annexed to Def. Mot. as Ex. I,

Docket Entry No. 32-10.)[4]  DSNY issued Plaintiff a warning that same day (the "December 14,

2013 warning").  (*Id.*)

On July 9, 2014, Plaintiff failed to report to work for a shift, and as a result, DSNY issued

Plaintiff a disciplinary complaint for failing to provide verifiable proof of an emergency for

failing to report to work (the "July 9, 2014 complaint").  (Def. 56.1 ¶¶ 18–19.)  Because this was

Plaintiff's second request for emergency leave in a six-month period, (NYSDHR Compl. 5), on

---

[4]  The Court's summary of the disciplinary complaints issued to Plaintiff includes facts not included in Defendant's 56.1 statement.  However, because the parties do not dispute that Plaintiff made a complaint to the New York State Division of Human Rights ("NYSDHR"), and that the NYSDHR thereafter investigated Plaintiff's complaint and issued findings, the Court includes this information in its summary of the relevant facts. *See Risco v. McHugh*, 868 F. Supp. 2d 75, 88 (S.D.N.Y. 2012) ("Where possible, the Court has relied on the undisputed facts in Defendant's 56.1 [s]tatement; however, direct citations to the record have also been used where relevant facts were not included in either of the parties' Rule 56.1 submissions."); *see also Prescient Acquisition Grp., Inc. v. MJ Pub. Tr.*, 487 F. Supp. 2d 374, 375–76 (S.D.N.Y. 2007) (finding that record evidence not cited in the defendants' 56.1 statement could be "fairly considered part of the record on the motion and, once submitted, could be relied upon by either party or the court").

July 15, 2014, during a probation evaluation interview, Plaintiff's counseling supervisor, C. Dominguez, informed Plaintiff that his request for emergency leave could negatively impact his performance evaluation, (Probation Evaluation Interviews ("Eval. Interviews") 5, annexed to Def. Mot. as Ex. F, Docket Entry No. 32-7).  Dominguez also advised Plaintiff of the importance of being a dependable and reliable employee while on probation.  (*Id*.)

DSNY also issued Plaintiff a disciplinary complaint as a result of a July 15, 2014 accident (the "July 15, 2014 complaint").  (NYSDHR Compl. 5.)  On July 15, 2014, Plaintiff "drove a multi-ton collection truck off the road, into a ditch, while on his way to a disposal site in New Jersey."  (*Id*.)  As a result of the accident, the collection truck rolled over, resulting in serious damage to the collection truck and injury to Plaintiff's leg.  (*Id*.)  DSNY found Plaintiff "negligent" for his "fail[ure] to carefully use, maintain and operate Department vehicles [and] equipment."  (DSNY complaint records ("Compl. Records") 3, annexed to Def. Mot. as Ex. E, Docket Entry No. 32-6.)  On September 18, 2014, Plaintiff's counseling supervisor, Matt McDonough, told him that the July 15, 2014 accident could result in termination or an extension of his probation.  (Eval. Interviews 2.)

Due to the injuries Plaintiff sustained from the July 15, 2014 accident, Plaintiff was on medical leave from July 15, 2014 to August 17, 2014.  (Def. 56.1 ¶ 23.)  While on medical leave, on or about August 1 and August 8, 2014, Plaintiff received two disciplinary complaints for failing to provide the necessary medical documentation for his paid medical leave (the "August 1, 2014 complaint" and "August 8, 2014 complaint").  (*Id*. ¶¶ 24–27.)  DSNY issued these disciplinary complaints after reminding Plaintiff numerous times over a six-week period that he needed to provide documentation for his medical leave to DSNY's Health Care Facility. (NYSDHR Compl. 6.)

On September 30, 2014, McDonough met with Plaintiff to discuss the August 1, 2014 and August 8, 2014 complaints and informed Plaintiff that failing to follow DSNY's rules regarding sick leave could result in an extension of his probation or termination. (Eval. Interviews 7.)

On January 23, 2015, Plaintiff failed to obey a direct order from his supervisor James Fox (the "January 23, 2015 incident"). (Def. 56.1 ¶¶ 27–29.) Despite Fox's warning that Plaintiff's insubordination would result in disciplinary action, Plaintiff refused to comply with Fox's order, "went upstairs to the men's locker room and changed out of his uniform." (NYSDHR Compl. 6.) Due to Plaintiff's failure to comply with Fox's orders, Fox issued Plaintiff a disciplinary complaint (the "January 23, 2015 complaint"). (Def. 56.1 ¶¶ 27–29; Compl. Records 7; NYSDHR Compl. 6.) Following the January 23, 2015 incident, McDonough advised Plaintiff that his record of disciplinary complaints could result in an extension of his probation or termination. (Eval. Interviews 8.)

At some unspecified time in January of 2015, Plaintiff's supervisor addressed with Plaintiff all of his disciplinary complaints. (Pl. Dep. 21:1–11.) Shortly thereafter, DSNY's Personnel Management Division drafted a memorandum dated February 5, 2015, recommending Plaintiff's termination based on the letter of warning and five disciplinary complaints (the "Termination Memo").[5] (Def. 56.1 ¶¶ 32– 33; Termination Memo, annexed to Def. Mot. as Ex. H, Docket Entry No. 32-8.) Upon review of the Termination Memo, DSNY's Evaluation

---

[5] The Termination Memo states that the "Personnel Management Division recommends Termination for Plaintiff based on: 2 Chargeable Accidents, Letter of Warning and Complaint issued; 1 AWOL (7/9/14), S/W Phillip requested Emergency Leave, proof submitted and was denied; 2 Complaints issued by H.C.F. for failure to follow Medical Leave guidelines while out on paid sick leave; 1 Complaint issued for failure to follow a direct order/AWOL." (Termination Memo.)

Review Board (the "DSNY Review Board") unanimously decided to terminate Plaintiff, effective February 23, 2015. (Def. 56.1 ¶¶ 34–36.) By letter dated February 23, 2018, DSNY notified Plaintiff that his "probationary services as a sanitation worker were terminated," effective immediately. (*Id.* ¶¶ 37–38.)

### c. Allegations of race discrimination

Plaintiff contends that DSNY generally, and specifically Cavallaro, subjected him to unequal terms and conditions of employment because of his race by engaging in conduct such as inciting arguments, ignoring him, making disparaging remarks, and giving him undesirable assignments. (Compl. 6–7; Pl. Dep. 28:22–29:3.) Plaintiff contends that Cavallaro went out of his way not to speak to Plaintiff, and instead communicated with Plaintiff through other sanitation workers. (Pl. Dep. 74:6–9.) When Cavallaro did speak to Plaintiff, he made disparaging remarks to him including: (1) telling Plaintiff to stay in his place; (2) calling Plaintiff "boy"; and (3) cursing at Plaintiff, including, telling Plaintiff to get the "f" out of his office. (Def. 56.1 ¶¶ 49–51; Pl. Dep. 32:15–25, 51:7–10, 74:5–16.) In addition, Cavallaro consistently made "[Plaintiff's] job harder than what it was . . . [and] [h]e would do little things to try and irritate [Plaintiff] or to [try and] incite an . . . argument . . . . " (Pl. Dep. 31:5–9.) Cavallaro also tried to physically fight Plaintiff and harassed him while he was working in the field by driving by the location where Plaintiff was working fifteen to twenty times in a forty-five minute time span.[6] (Pl. Dep. 29:18–19, 49: 21–23, 74:1–17.)

Plaintiff further contends that, although DSNY usually made assignments at BK 14 based on seniority, on several occasions, Cavallaro subverted this policy and gave assignments to

---

[6] Plaintiff alleges in the Complaint that "[o]ver a [forty-five] min[ute] time span, [Cavallaro] popped up over [ten] times," while he worked out in the field. (Compl. 6.)

"everyone else first" and left Plaintiff last, which resulted in Plaintiff receiving "the worst truck" and route. (Pl. Dep. 29:21–30:5.) Plaintiff believes Cavallaro treated him poorly due to his race. (Pl. Dep. 28:22–25.)

### d. Complaints filed with NYSDHR and EEOC

On February 25, 2015, Plaintiff filed a letter with the Commissioner of Sanitation, Kathryn Garcia, requesting that she re-evaluate the decision to terminate him. (Pl. Letter dated February 25, 2015, annexed to Def. Mot. as Ex. L, Docket Entry No. 32-13.) On June 9, 2015, Plaintiff filed a complaint with NYSDHR alleging unlawful discriminatory practice relating to employment because of race/color. (Def. 56.1 ¶ 42.) On November 20, 2015, NYSDHR determined that there was no probable cause to believe DSNY engaged in any unlawful discriminatory practices. (*Id*. ¶ 44.) NYSDHR examined DSNY's records of the complaints issued to Plaintiff and provided a summary of the events leading up to each complaint and the discussions various DSNY personnel had with Plaintiff following each incident. (NYSDHR Compl. 11–14.) As part of its investigation into Plaintiff's disparate treatment claim, NYSDHR reviewed the records of white sanitation workers on probation who were assigned to BK 14 at the same time as Plaintiff. (NYSDHR Compl. 7–8.) NYSDHR found that none of the white sanitation workers received more than one disciplinary complaint during their probationary period and that none of Plaintiff's white colleagues received disciplinary complaints "for disobeying a direct order, failing to safely operate a DSNY Vehicle[,] or failing to follow [DSNY's] sick leave and emergency leave guidelines." (*Id*. at 8.) DSNY's Office of Equity, Diversity & Inclusion and the Equal Employment Opportunity Commission ("EEOC") also conducted investigations and found no probable cause to support Plaintiff's allegations of

discrimination.  (Def. 56.1 ¶ 43; Pl. Dep. 71:21–73:3).  Plaintiff received a right to sue letter dated February 19, 2016.  (Compl. 10–12.)

## II.  Discussion

### a.  Standards of review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018); *see also Cortes v. MTA NYC Transit*, 802 F.3d 226, 230 (2d Cir. 2015).  The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."  *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)).  A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.  The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment.  *Id.*  The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the nonmoving party, a rational juror could find in favor of that party."  *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

Even where a summary judgment motion is wholly unopposed, "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial."  *Gachette v. Metro North-High Bridge*, 598 F. App'x 803, 804 (2d Cir. 2015) (quoting *Vermont Teddy Bear Co., Inc. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 244 (2d Cir. 2004)).

### b. Plaintiff's claims against DSNY

Plaintiff brings his claims against his former employer, the DSNY, an agency of the City of New York (the "City"). Pursuant to the New York City Charter Section 396, the DSNY is immune from suits and all claims against the DSNY must be brought against the City of New York.

Section 396 of the New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law." N.Y. City Charter Ch. 17, § 396. Section 396 "has been construed to mean that New York City departments, as distinct from the City itself, lack the capacity to be sued." *See Ximines v. George Wingate High Sch.*, 516 F.3d 156, 159–60 (2d Cir. 2008); *see also Johnson v. Dobry*, 660 F. App'x 69, 72 (2d Cir. 2016) (stating that actions must be brought against the City of New York, not an agency (citing N.Y. City Charter ch. 17, § 396)); *Owens v. N.Y.C. Dep't of Sanitation*, 11-CV-8297, 2013 WL 150245, at *5 (S.D.N.Y. Jan. 15, 2013) (stating that "all claims against [the] defendant DSNY should be amended because it is an agency of the City of New York and is therefore not a legally suable entity").

Although Plaintiff has not asked the Court to construe his discrimination claims as against the City, in light of Plaintiff's *pro se* status, *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (stating that in reviewing a *pro se* litigant's complaint or other submissions, the court must be mindful to hold the pleadings "to less stringent standards than formal pleadings drafted by lawyers), and the Second Circuit's "strong preference for resolving disputes on the merits," *Williams v. Citigroup, Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011), the Court substitutes the City for the DSNY in this action pursuant to Rule 21 of the Federal Rules of Civil Procedure. *See*

Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."); *see also Echeverri v. New York City Dep't of Sanitation*, No. 15-CV-80, 2016 WL 427914, at *4 (S.D.N.Y. Feb. 3, 2016) (construing the plaintiff's claims against the DSNY as against the City pursuant to Rule 21 at the summary judgment stage); *Burgis v. Dep't of Sanitation*, No. 13-cv-1011, 2014 WL 1303447, at *4-5 (S.D.N.Y. Mar. 31, 2014) (dismissing the plaintiff's claims against the DSNY and construing the plaintiff's claims against the Department of Sanitation as against the City).[7]

### c. Title VII discrimination claims

Plaintiff's claims of race discrimination are based on his termination and the unequal terms and conditions he experienced during his employment. (Compl. 4–5.) Plaintiff alleges that the complaints used to justify his termination were false and tainted by racial bias and discrimination, and, as a result, he was unfairly terminated from his position because of his race. (Pl. Dep. 34:3–7, 44:2–9.) In addition, Plaintiff alleges that the substance of the complaints against him were false, and, but for his race, DSNY would have been more willing to investigate the validity of the complaints made against him. (*Id.*) Plaintiff also argues that Cavallaro is biased against him because of his race, and would portray Plaintiff negatively and falsely to Plaintiff's other supervisors, and those supervisors would "follow suit" and treat him in a similar manner. (Pl. Dep. 28:22–29:12.) Further, Plaintiff argues that while the complaints leading to his termination did not necessarily come from Cavallaro, Cavallaro's dislike of him was communicated to others through the way Cavallaro spoke about him, ultimately portraying him

---

[7] Because DSNY is represented by New York City Corporation Counsel, the City has been on notice of Plaintiff's claims in this case and therefore will not be prejudiced by joining the action at this stage.

in a negative light, and causing harm to his reputation and standing at DSNY.  (Pl. Dep. 52:20–53:4, 60:18–61:4, 75:25–76:5.)

Defendant moves to dismiss Plaintiff's Title VII claims on the grounds that Plaintiff has failed to established a *prima facie* case of race discrimination because "the record is devoid of sufficient evidence to establish an inference of discrimination."  (Def. Mem. 4.)

Title VII discrimination claims are analyzed under the three-stage, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016); *Littlejohn v. City of New York*, 795 F.3d 297, 307–08 (2d Cir. 2015); *see also Tillery v. N.Y. State Office of Alcoholism & Substance Abuse Servs.*, 739 F. App'x 23, 25 (2d Cir. 2018). Under the framework, a plaintiff must establish a *prima facie* case of discrimination.  *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010).  If the plaintiff meets this "minimal" burden, *Holcomb v. Iona Coll.*, 521 F.3d 130, 139 (2d Cir. 2008), a "temporary presumption" of discrimination arises, and the burden shifts to the defendant-employer to articulate a legitimate, nondiscriminatory reason for the challenged conduct, *Vega*, 801 F.3d at 84 (quoting *Littlejohn*, 795 F.3d at 307, 311).  *See St. Mary's Honor Ctr.*, 509 U.S. at 506–07; *Ruiz*, 609 F.3d at 492.  The defendant's burden "is one of production, not persuasion; it 'can involve no credibility assessment.'"  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 509).  If the defendant-employer articulates such a reason, the burden shifts back to the plaintiff to show that the defendant-employer's reason was pretext for the discrimination.  *Vega*, 801 F.3d at 83; *see also Tillery*, 739 F. App'x at 25 ("[T]he plaintiff must present 'admissible evidence . . . that

would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." (citing *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009))); *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 156 (2d Cir. 2010) ("[A] plaintiff need only show that the defendant was in fact motivated at least in part by the prohibited discriminatory animus.").

### i. *Prima facie* **case**

To establish a *prima facie* case of employment discrimination under Title VII, a plaintiff must show that: "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Vega*, 801 F.3d at 83 (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)); *see also Shultz v. Congregation Shearith Israel of City of N.Y.*, 867 F.3d 298, 304 (2d Cir. 2017); *Meyer v. N.Y. State Office of Mental Health*, 679 F. App'x 89, 90 (2d Cir.), *cert. denied*, 138 S. Ct. 143 (2017); *Ruiz*, 609 F.3d at 491–92.

Defendant does not dispute that Plaintiff belongs to a protected class. (Def. Mem. 4.) Plaintiff identifies as black and is therefore a member of a "protected class" under Title VII. *See Littlejohn*, 795 F.3d at 312 (finding the plaintiff satisfied first element by self-identifying as black). Nor does Defendant contest that Plaintiff was qualified to be a DSNY sanitation worker. Although Plaintiff received disciplinary complaints stemming from several incidents, a plaintiff need not show perfect performance or even average performance to establish qualification. *See Kaboggozamusoke v. Rye Town Hilton Hotel*, 370 F. App'x. 246, 248 n.1 (2d Cir. 2010) ("[A]ll that is required is that the plaintiff establish basic eligibility for the position at issue." (alteration in original) (citation omitted)); *see also Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001) ("As we have repeatedly held, the qualification necessary to shift the burden to

defendant for an explanation of the adverse job action is minimal; plaintiff must show only that he possesses the basic skills necessary for performance of the job. As a result, especially where discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw." (alteration, citations, and internal quotation marks omitted)).

In addition, Defendant does not dispute that Plaintiff's termination is an adverse action. However, because the Complaint allegations and Plaintiff's deposition testimony suggest other alleged adverse actions, the Court addresses whether Plaintiff has established adverse actions other than his termination in addition to an inference of discrimination.

### 1. Adverse employment actions

In addition to his termination, the Court understands Plaintiff to allege the following adverse employment actions: (1) meritless complaints which led to Plaintiff's termination, (2) undesirable route assignments, including getting the worst trucks and routes, and (3) harassment by Cavallaro at the station and while working in the field. (Def. 56.1 ¶¶ 49–51.)

An "adverse employment action" is "a materially adverse change in the terms and conditions of employment." *Shultz*, 867 F.3d 298, 304 (2d Cir. 2017) (quoting *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)); *see also Chung v. City Univ. of N.Y.*, 605 F. App'x 20, 22 (2d Cir. 2015) ("For purposes of a Title VII discrimination claim by a person already employed, an adverse employment action is defined in our Circuit as a materially adverse change in the terms and conditions of employment."). There is "no bright-line rule to determine whether a challenged employment action is sufficiently significant to serve as the basis for a claim of discrimination." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (citing *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 437, 446 (2d Cir.

1999), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53

(2006)).  "Examples of materially adverse employment actions include termination of

employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a

material loss of benefits, significantly diminished material responsibilities, or other indices

unique to a particular situation."  *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004)

(alteration, citation, and internal quotation marks omitted); *see, e.g.*, *Robinson v. Dibble*, 613 F.

App'x 9, 12 (2d Cir. 2015) (noting that the plaintiff's termination constituted an "adverse

employment action"); *Levitant v. City of N.Y. Human Res. Admin.*, 558 F. App'x 26, 29 (2d Cir.

2014) ("It is well-established that a failure to promote is an adverse employment action." (citing

*Tregelia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002))); *Sanders*, 361 F.3d at 755

(holding that an adverse employment action includes "termination of employment, a demotion

evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits,

significantly diminished material responsibilities, or other indices unique to a particular

situation." (citations and internal quotation marks omitted)).  However, conduct that is a "mere

inconvenience" does not rise to the level of an adverse employment action.  *Parsons v.

JPMorgan Chase Bank, N.A.*, No. 16-CV-0408, 2018 WL 4861379, at *7 (E.D.N.Y. Sept. 30,

2018) (quoting *Sanders*, 361 F.3d at 755).

### A.   Complaints against Plaintiff

DSNY issued Plaintiff one letter of warning and five disciplinary complaints over the

course of Plaintiff's employment, all of which qualify as adverse employment actions because

they were included in the Termination Memo, which led to Plaintiff's termination.

 "[A] negative performance review, without more, does not represent an adverse

employment action."  *See Fairbrother v. Morrison*, 412 F.3d 39, 56–57 (2d Cir. 2005).

However, a negative performance evaluation may constitute an adverse employment action under certain circumstances. *Sanders*, 361 F.3d at 756; *see also Farina v. Branford Bd. of Educ.*, 458 F. App'x 13, 17 (2d Cir. 2011) (same). A performance evaluation may qualify as an adverse action if it gives rise to a "materially adverse change in the terms and conditions of employment . . . [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities." *Bowles v. N.Y.C. Transit Auth.*, 285 F. App'x 812, 814 (2d Cir. 2008) (citations and internal quotation marks omitted). To qualify as an adverse employment action, a plaintiff must allege tangible consequences resulting from the negative performance evaluation. *See Fairbrother*, 412 F.3d at 56–57 (holding that an unsatisfactory evaluation did not constitute an adverse employment action where plaintiff did not assert that the evaluation negatively altered her compensation, benefits, or job title). "[D]isciplinary memoranda and evaluations are adverse employment actions only if they affect ultimate employment decisions such as promotion, wages, or termination." *Eldridge v. Rochester City Sch. Dist.*, 968 F. Supp. 2d 546, 557 (W.D.N.Y. 2013) (quoting *Regis v. Metro. Jewish Geriatric Ctr.*, No. 97-CV-0906, 2000 WL 264336, at *8 (E.D.N.Y. Jan. 11, 2000)); *see also Worrell v. N.Y.C. Dep't of Educ.*, 140 F. Supp. 3d 231, 239 (E.D.N.Y. 2015) (finding that a disciplinary and counseling memoranda placed in the plaintiff's file did not constitute an adverse employment action because plaintiff did not offer any evidence that the memorandum had a "deleterious effect on the conditions of her employment"); *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 407 (S.D.N.Y. 2014) ("[T]he threat of disciplinary action, without more, does not constitute an adverse employment action." (citations omitted)).

In the Termination Memo, the Personnel Management Division recommended Plaintiff's termination based on the letter of warning and five disciplinary complaints DSNY issued to

Plaintiff.  (Termination Memo.)  On February 13, 2015, the DSNY Review Board reviewed the Termination Memo and unanimously decided to terminate Plaintiff's employment based on his disciplinary record.  (Def. 56.1 ¶¶ 34–36.)  Because the letter of warning and five disciplinary complaints were the basis for the Termination Memo, which led to a "tangible consequence," these complaints qualify as adverse employment actions.  *See Farina*, 458 F. App'x at 17; *Taylor v. N.Y.C. Dep't of Educ.*, No. 11-CV-582, 2012 WL 5989874, at *7 (E.D.N.Y. Nov. 30, 2012) (finding that a negative performance evaluation that triggers negative consequences to the conditions of employment is an adverse employment action).

### B.  Undesirable assignments and trucks

Plaintiff alleges that Cavallaro deliberately assigned him the worst trucks and routes by subverting DSNY's system of making assignments based on seniority.  (Compl. 5; Pl. Dep. 29:23–30:3.)

Defendant argues that none of the actions taken by Cavallaro, including allegedly assigning Plaintiff unfavorable trucks and routes, can be viewed as adverse employment actions because Cavallaro's actions did not result in any materially adverse changes in the terms and conditions of Plaintiff's employment. (Def. Mem. 8–9.)

"Assignments within an employee's job description are generally not materially adverse." *Forest v. N.Y. State Office of Mental Health*, 672 F. App'x 42, 45 n.3 (2d Cir. 2016).  Where "assignments fall within the duties of a plaintiff's position, receiving unfavorable schedules or work assignments does not, without more, rise to the level of an adverse employment action." *Guity v. Uniondale Union Free Sch. Dist.*, No. 15-CV-5693, 2017 WL 9485647, at *17 (E.D.N.Y. Feb. 23, 2017) (quoting *Johnson v. Long Island Univ.*, 58 F. Supp. 3d 211, 224 (E.D.N.Y. 2014)); *see also Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005)

("[R]eceiving unfavorable schedules or work assignments do not rise to the level of adverse employment action because they do not have a material impact on the terms and conditions of Plaintiff's employment" (internal quotation marks omitted)). "To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Galabya*, 202 F.3d at 640 (quoting *Crady v. Liberty Nat'l Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). A change in working conditions is materially adverse if it results in a "materially significant disadvantage" to the employee. *Valenti v. Massapequa Union Free Sch. Dist.*, No. 03-CV-1193, 2006 WL 2570871, at *10 (E.D.N.Y. Sept. 5, 2006) (citing *Galabya*, 202 F.3d at 641). A change in job responsibilities that is "materially less prestigious, materially less suited to [a plaintiff's] skills and expertise, or materially less conducive to career advancement" may constitute an adverse employment action. *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 255 (E.D.N.Y. 2012) (quoting *Galabya*, 202 F.3d at 640)). Being asked to perform tasks that are demeaning, or outside the scope of an employee's work schedule may also qualify as an adverse employment action. *See Antrobus v. City of New York*, No. 11-CV-5434, 2014 WL 1224222, at *8 (E.D.N.Y. Mar. 24, 2014) (finding the plaintiff had alleged a plausible disparate treatment claim where he stated, *inter alia*, that he had to work on two holidays when other sanitation workers did not).

Plaintiff's undesirable assignments do not constitute adverse employment actions. There is no evidence of a "materially adverse" change to Plaintiff's title, responsibilities, salary, or benefits as a result of the undesirable routes and trucks assigned to him. In addition, Plaintiff has not shown that he was made to perform tasks that were demeaning, or outside the scope of his employment terms. Nor has Plaintiff shown that being assigned the worst trucks and routes

resulted in a "materially significant disadvantage" to him while performing his job duties. Plaintiff's assignments are therefore not adverse employment actions.

### C. Cavallaro's treatment of Plaintiff

Plaintiff testified at his deposition that Cavallaro made disparaging remarks to him including: (1) telling Plaintiff to stay in his place, (2) calling Plaintiff "boy", and (3) cursing at Plaintiff and telling Plaintiff to get the "f" out of his office. (Def. 56.1 ¶¶ 49–51; Pl. Dep. 32:15–25, 51:7–10, 74:5–16.) In addition, Cavallaro would go out of his way not to speak to Plaintiff, and instead communicate with Plaintiff through other sanitation workers. (Pl. Dep. 74:6–9.) Plaintiff also contends that Cavallaro would excessively monitor him in the field. (Def. 56.1 ¶¶ 49–51.)

Defendant argues that the "record offers no evidence that the alleged employment actions taken by Paul Cavallaro against [P]laintiff were accompanied by a termination of employment, a demotion, a less distinguished title, a material loss of benefits, or significantly diminished material responsibilities," and that Cavallaro's alleged treatment of Plaintiff thus does not qualify as an adverse employment action. (Def. Mem. 9.)

"[U]nprofessional and boorish" treatment does not amount to an adverse employment action. *See Mathirampuzha v. Potter*, 548 F.3d 70, 73, 78–79 (2d Cir. 2008). An "incident [must] constitute an 'intolerable alteration' of the plaintiff's working conditions, so as to substantially interfere with or impair the [plaintiff's] ability to do his job." *Id.* (citations omitted). "[V]erbal abuse is typically insufficient to constitute an 'adverse employment action' because [negative] or otherwise insulting statements are hardly even actions, let alone adverse actions." *Scott v. City of N.Y. Dep't of Correction*, 641 F. Supp. 2d 211, 231 (S.D.N.Y. 2009), *aff'd sub nom. Scott v. N.Y. City Dep't of Correction*, 445 F. App'x 389 (2d Cir. 2011) (quotation

marks omitted) (quoting *Blake v. Potter*, No. 03-CV-7733, 2007 WL 2815637, at *8 (S.D.N.Y. Sept. 25, 2007)); *see also Mallett v. Town of Plainville*, No. 01-CV-1137, 2006 WL 931712, at *8 (D. Conn. Apr. 4, 2006) ("[T]he fact that [plaintiff's co-worker] used offensive and inappropriate language and called [plaintiff] names on a few occasions does not constitute adverse action," nor is "criticism alone" sufficient to qualify as an adverse action); *Teachout v. N.Y. City Dep't. of Educ.*, No. 04-CV-945, 2006 WL 452022, at *13 (S.D.N.Y. Feb. 22, 2006) ("Negative comments . . . are not, standing alone, adverse employment actions, because mere comments do not materially affect employment.").

In addition, excessive scrutiny, monitoring, and criticisms of a plaintiff's job performance, are not adverse employment actions absent evidence of a materially adverse impact. *See MacEntee v. IBM*, 471 F. App'x 49, 50 (2d Cir. 2012) (holding that "close supervision of the plaintiff's time entries and workplace conduct — [were] not cognizable 'adverse employment actions'"); *see also Dawson v. City of New York*, No. 09-CV-5348, 2013 WL 4504620, at *10 (S.D.N.Y. Aug. 19, 2013) ("[C]ourts in this circuit have found that reprimands . . . and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or placed on probation." (citing *Uddin v. City of New York*, 427 F. Supp. 2d 414, 429 (S.D.N.Y. 2006))).

There is no evidence suggesting that Cavallaro's alleged treatment of Plaintiff materially affected Plaintiff's employment. Although Plaintiff alleges that Cavallaro would refuse to speak to him directly, and when he did, Cavallaro would curse at him, mistreat him, and make disparaging remarks, (Compl. 6; Def. 56.1 ¶¶ 49–51; Pl. Dep. 32:15–25, 51:7–10, 74:5–16), Plaintiff has not shown that Cavallaro's behavior resulted in any material alteration to Plaintiff's

job. Nor does Plaintiff contend Cavallaro's communication through other employees rather than directly to him, "interfered with or impair[ed]" his ability to do his job.

Similarly, Plaintiff fails to present any evidence suggesting that the frequent monitoring of his job performance by Cavallaro materially altered his job. Plaintiff's statements that Cavallaro would harass him in the field by driving by him frequently are simply insufficient to establish an adverse action. (Pl. Dep. 29:18–19, 49: 21–23, 74:1–17.) Plaintiff continued to work at DSNY in the same position, at the same pay, and with the same responsibilities, despite these incidents. Moreover, Plaintiff acknowledges that Cavallaro was not involved in the decision to terminate him. (Def. 56.1 ¶ 55; Pl. Dep. 52:20–22.) Plaintiff has therefore failed to establish that Cavallaro's conduct towards him constitutes an adverse employment action.

### 2. Inference of discrimination

The Court next considers whether Plaintiff's (1) termination, or (2) the letter of warning and the five disciplinary complaints that led to his termination occurred under circumstances evidencing an inference of discrimination.

Inference of discrimination "is a 'flexible [standard] that can be satisfied differently in differing factual scenarios.'" *Saji v. Nassau Univ. Med. Ctr.*, 724 F. App'x 11, 17 (2d Cir. 2018) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996)). "No one particular type of proof is required to show that Plaintiff's termination occurred under circumstances giving rise to an inference of discrimination." *Moore v. Kingsbrook Jewish Med. Ctr.*, No. 11-CV-3625, 2013 WL 3968748, at *6 (E.D.N.Y. July 30, 2013) (citations omitted). An inference of discrimination can be drawn from circumstances such as "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees

not in the protected group; or the sequence of events leading to the plaintiff's [adverse employment action]," *Franchino v. Terence Cardinal Cook Health Care Center, Inc.*, 692 F. App'x 39, 41 (2d Cir. 2017) (citing *Littlejohn*, 795 F.3d at 312), or by showing that an employer treated an employee "less favorably than a similarly situated employee outside his protected group," *Toussaint v. NY Dialysis Services, Inc.*, 706 F. App'x 44, 45 (2d Cir. 2017) (quoting *Graham v. Long Island Rail Road*, 230 F.3d 34, 39 (2d Cir. 2000)). Remarks by someone other than the decision-maker "have little tendency to show that the decision-maker was motived by the discriminatory sentiment expressed in the remark." *Sloan v. United Techs. Corp.*, 596 F. App'x 35, 36 (2d Cir. 2015) (quoting *Tomassi v. Insignia Fin. Grp.*, 478 F.3d 111, 115 (2d Cir. 2007)). "In assessing the record to determine whether there is a genuine issue to be tried," a court is obliged to "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 87 (2d Cir. 2016) (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999)).

There is no evidence to support Plaintiff's claim that any of his adverse employment actions were racially motivated. To show proof of discrimination, Plaintiff relies on (1) the negative light in which Cavallaro portrayed him, allegedly resulting in harm to his reputation at DSNY; (2) DSNY's failure to investigate the credibility of the disciplinary complaints against him; (3) DSNY's failure to terminate probationary white sanitation workers with far worse infractions than his infractions; and (4) his termination, because he was generally a good worker who was on time and qualified.

### A. Cavallaro's portrayal of Plaintiff

Plaintiff's theory that Cavallaro portrayed him in a negative light to other supervisors due to Plaintiff's race, which, in turn, may have played a role in his termination, does not raise an inference of discrimination. Plaintiff testified that, to his knowledge, Cavallaro was not involved in the decision to terminate him. (Pl. Dep. 75:25–76:5.) In addition, none of the disciplinary complaints cited in the Termination Memo, which resulted in Plaintiff's termination, relate to any incidents or altercations Plaintiff had with Cavallaro. (Def. 56.1 ¶¶ 18–28.) While Plaintiff alleges that Cavallaro made a false complaint against him on February 7, 2015, there is no evidence before the Court that the DSNY Review Board knew of or considered Cavallaro's complaint in making its decision to terminate Plaintiff. (Recommendation to Terminate, annexed to Def. Mot. as Ex. H, Docket Entry No. 32-9.) There is therefore no evidence that Cavallaro played any role in the DSNY Review Board's decision to terminate Plaintiff. *See Sloan*, 596 F. App'x at 36. Without more, Plaintiff's claim that Cavallaro's portrayal of him, due to his race, caused his termination, is merely conclusory and speculative.

### B. Defendant's failure to investigate the complaints and Defendant's treatment of white sanitation workers

Without any support in the record, Plaintiff contends that had he been white, DSNY would have conducted a further investigation into the validity of the disciplinary complaints against him. (56.1 ¶ 60; Pl. Dep. 33:18–34:7.) Plaintiff also contends that DSNY allowed "other white sanitation workers who were still on probation, [to] come in late, have numerous absences without authorized leave, fail drug tests, and have numerous accidents," without termination or any other consequences. (Pl. Dep. 34:3–7.)

Defendant argues that "the record lacks any evidence that plaintiff was treated less favorably than similarly-situated employees outside of his protected group," and that Plaintiff

does not "shoulder his burden" of presenting "competent evidence giving rise to an inference of racial discrimination." (Def. Mem. 13.) In addition, Defendant argues that Plaintiff "fails to identify any comparators in support of his race discrimination claim." (Def. Mem. 14.)

"Mere 'conclusory allegations or unsubstantiated speculation' by the plaintiff will not defeat summary judgment." *DiGirolamo v. MetLife Grp., Inc.*, 494 F. App'x 120, 121–22 (2d Cir. 2012) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). However, a plaintiff may raise an inference of discrimination by showing that his employer treated him less favorably than a similarly situated employee outside his protected group. *See Graham*, 230 F.3d at 39. "To raise an inference of discrimination by showing that he was subjected to disparate treatment, the plaintiff must establish that he was 'similarly situated in all material respects' to the individuals with whom he seeks to compare himself." *Diggs v. Niagara Mohawk Power Corp.*, 691 F. App'x 41, 43 (2d Cir. 2017) (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)).

Plaintiff fails to present any evidence to support his claim that had he been white, DSNY would have conducted an investigation into the validity of his disciplinary complaints. Further, as reflected in the record, NYSDHR did conduct an investigation into Plaintiff's claims of discrimination, by examining DSNY's records of the complaints and providing a summary of the events leading up to each complaint and the discussions various DSNY personnel had with Plaintiff following each incident. (NYSDHR Compl. 11–14.)

In addition, Plaintiff fails to present evidence that his white counterparts were "similarly situated in all material respects." Plaintiff fails to show that his white counterparts were "subject to the same workplace standards" or that they engaged in comparable conduct. *Graham*, 230 F.3d at 40; *see also Shumway*, 118 F.3d at 64 (finding that the plaintiff failed to prove that he

was similarly situated after presenting no evidence of similar infractions by comparators). Plaintiff's speculation is not probative evidence and is insufficient to support any inference of discrimination.[8]

### C. Plaintiff's termination

Plaintiff contends that because he was one of DSNY's "better workers," went to work even when inconvenient, and "hardly missed any work in sixteen months . . . ," his termination itself is proof of discrimination. (Pl. Dep. 28:8–21, 61:1–4.)

"[E]ven if sincerely held, a plaintiff's 'feelings and perceptions of being discriminated against' do not provide a basis on which a reasonable jury can ground a verdict." *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 75 (2d Cir. 2015); *see Rosario v. Hilton Worldwide, Inc.*, No. 09-CV-5336, 2011 WL 336394, at *3 (E.D.N.Y. Jan. 24, 2011) (finding that plaintiff's "gut feeling," did not allow for an inference of discrimination to be drawn and was not sufficient to defeat a motion for summary judgment without the support of specific facts supporting his claim of discrimination).

---

[8] Notwithstanding Plaintiff's failure to produce any evidence to support his disparate treatment claim, in support of its motion for summary judgment, Defendant notes that at the conclusion of its investigation, NYSDHR found that Plaintiff was not similarly situated to the employees to whom he attempts to compare himself. (Def. Mem. 11.) While not dispositive, the report noted that none of the white sanitation workers who worked with Plaintiff at BK 14 received more than one disciplinary complaint during their probationary period. (NYSDHR Compl. 7–8.) In addition, none of the white sanitation workers received disciplinary complaints "for disobeying a direct order, failing to safely operate a DSNY Vehicle or failing to follow the Department's sick leave and emergency leave guidelines." (*Id.* at 8); *see also McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 213 (2d Cir. 2006) (affirming a district court's ruling on the defendant's legitimate non-discriminatory reason for terminating the plaintiff where the district court relied on the Department of Education's investigatory conclusions that the plaintiff was using corporal punishment in the classroom).

Plaintiff's tenure at DSNY was not exemplary, nor was it devoid of criticism —

conditions which could have assisted the Court in concluding that Plaintiff's termination is proof

of discrimination. *See Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 382–83 (2d

Cir. 2001) (affirming the jury's finding of an inference of discrimination where plaintiff provided

"ample evidence of good performance and the complete absence of any negative evaluation,"

and where she was told by her supervisor that her discharge "had nothing to do with her

performance"). Construing the evidence in the light most favorable to Plaintiff, being a better

worker and hardly missing work, nevertheless fails to negate the letter of warning and five

disciplinary complaints made against Plaintiff for driving negligently, disobeying direct orders,

and failing to follow DSNY's emergency and medical leave policies. These facts do not give

rise to any inference that Plaintiff's termination was because of discrimination. Rather, they

demonstrate that Defendant had a legitimate reason to terminate Plaintiff's employment. *See*

*Yoselovsky v. Associated Press*, 917 F. Supp. 2d 262, 275 (S.D.N.Y. 2013) (finding that the

defendant met its burden by providing that the plaintiff's job performance "had, for many

months, fallen well below his managers' expectations," and his "managers eventually determined

that his performance had not improved to an acceptable level and made the decision to

terminated him"); *see also Duffy v. State Farm Mut. Auto. Ins. Co.*, 927 F. Supp. 587, 594

(E.D.N.Y. 1996) (finding that defendant articulated a legitimate, nondiscriminatory reason for

plaintiff's termination after submitting "affidavits of numerous employees describing in detail

plaintiff's unsatisfactory job performance and bad attitude").

Plaintiff has failed to allege any facts from which the Court can infer that discrimination

played any role in his termination or the letter of warning and five disciplinary complaints that

led to his termination. Accordingly, the Court grants Defendant's motion for summary judgment and dismisses Plaintiff's claims.[9]

### III. Conclusion

For the foregoing reasons, the Court grants Defendant's motion for summary judgment and dismisses Plaintiff's Title VII racial discrimination claims. The Clerk of Court is directed to close this case.

Dated: February 28, 2019
  Brooklyn, New York

SO ORDERED:


   ___s/ MKB_____
   MARGO K. BRODIE
   United States District Judge

---

[9] Even assuming, however, that Plaintiff could make out a *prima facie* case, summary judgment in favor of Defendant would nevertheless be warranted because Plaintiff has failed to satisfy his burden of demonstrating pretext. When a defendant has offered a nondiscriminatory reason for terminating a plaintiff, the burden shifts to the plaintiff to show that the defendant's reason is pretextual. *Dunn v. URS Corp.*, 705 F. App'x 32, 33 (2d Cir. 2017) (stating that if an employer succeeds in articulating some legitimate, nondiscriminatory reason for an adverse action "the burden shifts back to the plaintiff to prove that the reasons proffered by the employer were pretextual" (citing *McDonnell Douglas Corp.*, 411 U.S. at 802)). To avoid summary judgment, a "plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) (quoting *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995); *see also Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 348 (2013); *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127 (2d Cir. 2013). A plaintiff "can demonstrate pretext with direct evidence . . . or with indirect or circumstantial evidence." *Bagley v. J.P. Morgan Chase & Co.*, No. 10-CV-1592, 2012 WL 2866266, at *12 (S.D.N.Y. July 12, 2012). Plaintiff has not presented any evidence showing that his employer's legitimate, non-discriminatory reasons for the letter of warning and five disciplinary complaints and his termination are pretext for discrimination. Further, Plaintiff's subjective feelings or beliefs that he was treated differently due to his race are insufficient to establish pretext. *See Cincotta v. Hempstead Union Free Sch. Dist.*, 313 F. Supp. 3d 386, 408 (E.D.N.Y. 2018) (At [the pretext] stage of the burden-shifting analysis, conclusory and speculative allegations will not suffice to demonstrate discriminatory intent." (citation and internal quotation marks omitted)).